UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, KELLY E. SORENSON,<br><br>Plaintiffs,<br><br>vs.<br><br>WADSWORTH BROTHERS CONSTRUCTION COMPANY, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:16-cv-875<br><br>Judge Clark Waddoups |

Before the court is Defendant Wadsworth Brothers Construction Company, Inc.'s motion for summary judgment (ECF No. 32) which seeks summary judgment on Plaintiff's claim of retaliation.[1] The motion has been fully briefed, a hearing was not requested, and Defendant has submitted a request for a decision on the same. (ECF No. 40). Having reviewed the pleadings and materials submitted, the court now enters this order **GRANTING** Defendant's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A material fact is one that may affect the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts

---

[1] On June 5, 2019, the court dismissed Plaintiff's claims of fraudulent claim, false record, conspiracy to defraud, and false receipt, leaving only his claim of retaliation. (*See* ECF No. 24).

to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id*. The court must "view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

## UNDISPUTED FACTS

Based upon the pleadings and representations of the parties and viewing the same in the light most favorable to Plaintiff, the court finds that the following facts are not in dispute:

1. Plaintiff was employed as a truck driver by Defendant from September 1, 2014 until November 14, 2014. (Compl., ECF No. 1 at ¶ 23; ECF No. 38-2 at 4, ¶ 14).

2. Plaintiff worked exclusively on two projects for Defendant—the Deicing Project and the I-15 Core Project. (Compl. at ¶ 29). Both projects were governed by the Davis-Bacon Act (the "Act") and required that Defendant comply with the Act. (*Id*. at ¶¶ 12–20).

3. Plaintiff believes that Defendant failed to pay him the additional $10.53 per hour he was owed under the Act. (*Id*. at ¶¶ 24–20, 53–56; ECF No. 38-2 at 4, ¶ 19).

4. Plaintiff began speaking with "several people" about his suspicion that Defendant was not paying him in accordance with the Act. (Compl. at ¶¶ 42–43; ECF No. 38-2 at 5: ¶ 29)

5. Plaintiff spoke with his supervisor, Steven Hall, approximately two weeks after he received his first paycheck, questioning why he was not receiving his full wages under the Act. (Compl. at ¶¶ 42–47; ECF No. 38-2 at 5, ¶¶ 30–33).

6. On or about October 25, 2004, Plaintiff met with Steven Hall's supervisor, Frank Barney and again asked why he was not receiving his full wages under the Act. (Compl. at ¶ 47; ECF No. 38-2 at 6, ¶¶ 35–36).

7. Following his meetings with Steven Hall and Frank Barney, Plaintiff was told not to come in to work for three days. (Compl. at ¶ 48; ECF No. 38-2 at 6, ¶¶ 35–36).

8. Plaintiff retuned to work on October 30, 2014 and worked without incident until November 8, 2014, when he became "very" ill.[2] Plaintiff left the jobsite early and was told that he could not return to work until he received two doctors' notes. (Compl. at ¶ 49; ECF No. 38-2 at 6–7, ¶¶ 39–44).

9. Plaintiff obtained the required releases on November 11, 2014 and returned to work on November 14, 2014. When he arrived, he was informed that everyone was laid off and was sent home. (Compl. at ¶ 49–50; ECF No. 38-2 at 7–8, ¶¶ 45–49).

10. Plaintiff brought a complaint before the Utah Labor Commission alleging that Defendant did not properly pay him, and on June 24, 2015, an administrative law judge ordered Defendant to pay Plaintiff $2,581.62 in non-paid Davis-Bacon wages. (ECF No. 19-1, at ¶ 1.) Defendant petitioned for the Third Judicial District Court of Salt Lake County, Utah, to review this award, and on May 25, 2017, that court held a trial on Plaintiff's claims, at which it heard testimony from Plaintiff and at least two of Defendant's employees. (*Id.* at ¶¶ 3–36). On June 7, 2017, that court issued a Memorandum Decision that denied Plaintiff's claims and found that Defendant's "timecards and timecard coding" and "calculation and paying of Bacon wages" were correct and that Defendant had paid Plaintiff "in full." (*Id.* at ¶ 38–41).

11. A member of Defendant's senior management team, Defendant's "Shop Office Administrator," Stephen Hall, and Frank Barney have all declared under penalty of perjury that Plaintiff was furloughed because work for the project he was working on was

---

[2] The parties dispute whether Plaintiff reported to his supervisors that he was dizzy. (*Compare* ECF No. 38-2 at 9, ¶ 55 *with* ECF No. 32-1 at 5–7). As is discussed more fully in Section C.2, below, this dispute is not material to the matters before the court and thus does not preclude Defendant from being granted summary judgment.

decreasing and that all truck drivers, including Stephen Hall, were furloughed relative to their seniority.  (*See* ECF Nos. 32-1, 34, 35).

    12. A form in Plaintiff's employment file, which he signed on November 14, 2014, states that he was terminated due to a "reduction in force & seasonal job related layoff," because the "work load [is] tapering off," and because truck driving jobs are "dropping off drastically, as well as labor force in other areas."  (*See* ECF No. 32-1 at 4).

## DISCUSSION

Plaintiff retaliation claim is brought under 31 USC § 3730(h) and alleges that Defendant illegally retaliated against him in violation of the False Claims Act (the "FCA").  That statute allows an employee to recover from his employer if he "is discharged . . . or in any other manner discriminated against in the terms and conditions of employment because of [his] lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]."  *See* 31 U.S.C § 3730(h).  In order to prevail on his claim of retaliation, Plaintiff must show that: "(1) [he] engaged in protected activity, (2) [D]efendant 'had been put on notice' of that protected activity, and (3) [D]efendant retaliated against the plaintiff 'because of' that activity."  *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019) (citing *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012); 31 U.S.C. § 3730(h)).  Defendant argues that Plaintiff cannot establish that any of these three elements and that it is therefore entitled to summary judgment.

### A. Plaintiff has established that he engaged in protected activity.

In 2009, Congress amended the False Claims Act to expand the universe of what is considered "protected activity" thereunder, recognizing that "other efforts to stop 1 or more violations [of the FCA]" were now protected.  *See Reed*, 923 F.3d at 764–65; 31 U.S.C. §

3730(h)(1). "In this expanded universe, whistleblowers who lawfully try to stop one or more violations of the [FCA] are protected, without regard to whether their conduct advances a private or government lawsuit under the [FCA]." *Reed*, 923 F.3d at 765.

The FCA forbids any person to knowingly present, or cause to be presented, to the Federal Government a "false or fraudulent claim for payment or approval." *See* 31 U.S.C. § 3729(a). In his Complaint, Plaintiff seems to suggest that although Defendant certified to the government that it was complying with the Act, such representations were false, as Defendant was failing to pay him full Davis-Bacon wages.[3] When viewed in a light most favorable to Plaintiff, Plaintiff's complaints that he was not being paid David-Bacon wages can, if read generously, be interpreted as an attempt to stop Defendant from falsely reporting that it was complying with the Act, and thus an attempt to stop Defendant from violating the FCA. As such, the court finds for purposes of this motion that Plaintiff has offered significant evidence to estbalishg that he likely engaged in protected activity when he complained to his supervisors Stephen Hall and Frank Barney that he was not receiving the Davis-Bacon wages to which he claims he was entitled.

### B. Plaintiff cannot show that he put Defendant on notice of his protected activity.

"To adequately plead a retaliation claim, a plaintiff must aver that the defendant was on notice of her protected activity. Once Congress expanded the scope of protected activity, the universe of conduct that a plaintiff could allege to show notice also necessarily expanded."

---

[3] This conclusion is drawn by the court's generous reading of Plaintiff's Complaint. In relevant part, the Complaint states that "[u]nder 29 CPR §5.5 contractors are required to certify their compliance with Davis-Bacon requirements" and that "Lori Wadworth, controller for Wadsworth Brothers, certified the payrolls under 29 CPR Subsection A." (Compl. at ¶¶ 20–21). These conclusory allegations do not adequately assert that Defendant was making fraudulent claims to the Federal Government, and the exhibit Plaintiff offers as part of these allegations is of no help; the court cannot discern what the attached spreadsheet of numbers is supposed to prove. (*See id.* at Ex. A).

5

*Reed*, 923 F.3d at 766.  The Tenth Circuit recently recognized that to put an employer on notice of his protected activity, a relator's actions "must convey a connection to the [FCA]." *See Reed* 923 F.3d at 766–67; *see also Cella v. MobiChord, Inc.*, No. 2:17-cv-527, 2020 WL 416668, at *7 (D. Utah Jan. 27, 2020) ("To plead notice, [plaintiff] must allege that [defendant] was aware that he had tried to stop [defendant's] alleged FCA violations.  In communications with his employer, he must convey a connection to the FCA.").  Such notice "can include informing the employer of illegal activities that would constitute fraud on the United States, warning the employer of regulatory noncompliance and false reporting of information to a government agency, or by explicitly informing the employer of an FCA violation." *Cella*, 2020 WL 416668, at *7 (quotations omitted; *citing McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 704 (10th Cir. 2012)).[4]  Plaintiff cannot establish that his communications with his supervisors conveyed the required "connection to the FCA" necessary to put Defendant on notice of his protected activity.

      Plaintiff's suggested claim that Defendant was violating the FCA is comprised of two steps.  First, that Defendant was not paying him proper Davis-Bacon wages, and second, that Defendant was fraudulently reporting to the Federal Government that it was.  Plaintiff has failed to offer significant evidence to show that he provided notice to Defendant that he was alleging this second step.  This failure is fatal, as the second step is the action that constitutes "illegal activities that would constitute fraud on the United States" and is therefore the "connection to the FCA" that Plaintiff must convey in order to effectively notify Defendant that he is engaging in protected activity under the FCA. *See Cella*, 2020 WL 416668, at *7.

      Plaintiff establishes in his Complaint and his affidavit submitted in opposition to Defendant's motion that he questioned Steven Hall and Frank Barney as to why he was not

---

[4] While *McBride* was not decided under the 2009 amendments to the FCA, its list of actions that can constitute notice under the FCA remain valid in the "expanded universe" created by the amendment.

receiving his full wages under the Act.  (Compl. at ¶¶ 42–47; ECF No. 38-2 at 5–6, ¶¶ 30–33, 35–36).  But he fails to show that he elevated his complaints to include a connection to a violation of the FCA, a fact that is supported by Stephen Hall's sworn Declaration, which states that his conversation with Plaintiff "didn't seem to be a serious issue—just a typical question that any new hire like [Plaintiff] might ask if they were confused about how their pay and benefits were calculated."  (ECF No. 35 at ¶ 9).  Because Plaintiff's complaints did not convey a connection to the FCA, as they were silent as to any form of allegation that Defendant was defrauding the Federal Government, Plaintiff failed to adequately notify Defendant of his protected activity.  Defendant is therefore entitled to summary judgment on Plaintiff's claim of retaliation.

### C. **Alternatively, Plaintiff cannot show that Defendant's actions were retaliatory.**

Included in 31 U.S.C. § 3730(h)(1) is a list of six categories of impermissible retaliatory acts: "discharge, demotion, suspension, threats, harassment, or any other manner of discrimination in the terms and conditions of employment."  *See Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 614 (10th Cir. 2018).  Here, Plaintiff alleges that Defendant retaliated against him for complaining that he was not paid his Davis-Bacon wages by "cutting his hours, making him obtain a full medical release, and [ultimately] terminating him."  (Compl. at ¶ 80).

As recognized by the Tenth Circuit, and as expressly stated in 31 U.S.C. § 3730(h)(1), Plaintiff must show that he suffered such retaliation "because of" his complaints.  *See Reed*, 923 F.3d at 764.  "The term 'because of' appears frequently in antidiscrimination laws [and] typically imports, at a minimum, the traditional standard of but-for causation."  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015).  Assuming *arguendo*, that

7

Plaintiff's complaints constituted protected activity and effective notice of the same, to prevail on his claim of retaliation, he must show that had he not complained of his wages, he would not have had his hours reduced, been required to provide a full medical release, or been terminated. He cannot do so, as Defendant has established typical, and non-retaliatory, business reasons as to why Plaintiff had his hours reduced (until he was ultimately furloughed) and was required to provide medical releases, and Plaintiff has failed to refute the same. Defendant is therefore also entitled to summary judgment on Plaintiff's retaliation claim on this alternative basis.

*1. Defendant had a typical business reason for reducing Plaintiff's hours.*

Defendant offers the sworn declarations of Lori Wadsworth, a member of Defendant's senior management team; Niccole Peeler, Defendant's "Shop Office Administrator"; Frank Barney, Defendant's "Shop Boss" and Plaintiff's supervisor; and Stephen Hall, a foreman for Defendant and another of Plaintiff's supervisors. (*See* ECF Nos. 32-1, 34, 35). Each of these declarations states that Plaintiff was furloughed because work for the project on which he was working was decreasing and that all truck drivers, including Stephen Hall himself, were being furloughed relative to their seniority. Defendant also offers a form dated November 14, 2014 and signed by Plaintiff, Frank Berry, and Niccole Peeler, that states that Plaintiff is being terminated due to a "reduction in force & seasonal job related layoff," because the "work load [is] tapering off," and because truck driving jobs are "dropping off drastically, as well as labor force in other areas." (*See* ECF No. 32-1 at 4).

Plaintiff responds to Defendant's argument by asking the court to apply the Title VII burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to his claim. Under such a framework, Plaintiff may refute Defendant's "facially nondiscriminatory reason" for his reduction in hours and termination by showing "that there is a

genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir. 1996). While the Tenth Circuit has not "formally adopted the *McDonnell Douglas* burden-shifting framework as applying to such claims [of FCA retaliation]," it has recognized that "other courts considering the issue have uniformly applied this framework" and has followed suit. *See Miller v. Inst. for Def. Analyses*, 795 F. App'x 590, 595 (10th Cir. 2019). The court will do the same.

Plaintiff argues that Defendant's assertion that his hours were reduced and he was furloughed is pretextual and that he actually had his hours cut, and was ultimately terminated, because he complained that he was not getting proper Davis-Bacon wages. The Tenth Circuit has recognized that typically, "a plaintiff may show pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the plaintiff was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Dewitt*, 845 F.3d at 1307 (quote cleaned up; citations and quotations omitted). In reviewing Plaintiff's contention of pretext, the court must "examine the facts as they appear to the person making the decision to terminate [P]laintiff" and "may not second guess the business judgment of [Defendant]." *Id*. (quote cleaned up; citations and quotations omitted). "Mere conjecture that the employer's explanation is a pretext for [retaliation] is an insufficient basis for denial of summary judgment." *Id*. (quote cleaned up; citations and quotations omitted).

Plaintiff raises two discrepancies to attempt to create genuine disputes of material fact as to whether Defendant's proffered reason for his reduction in hours and termination was

pretextual. First, Plaintiff argues that before he was terminated, both Stephen Hall and Frank Barney told him that if he did not stop complaining of, and talking to others about, deficient Davis-Bacon wages, he would be fired. Second, Plaintiff argues that when viewed together, Defendant's decision to send him home for three days, to require two medical releases, and to stall Plaintiff's return date all support an inference that Defendant "did not want the Plaintiff snooping about regarding the Davis-Bacon wages." (ECF No. 38 at 27–28). While the court notes that these facts are indeed disputed, as neither Stephen Hall nor Frank Barney admits to such statements being made and Defendants contest Plaintiff's characterization of its treatment of his medical situation, these disputes are not material or genuine. *See Dewitt*, 845 F.3d at 1306 ("A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.") (quotations and citation omitted).[5]

Even if the court assumes that Stephen Hall and Frank Barney made these statements, and that Defendants prolonged the amount of time Plaintiff needed to be off as a result of his medical issues, it does not refute Defendant's assertion that Plaintiff, and every other truck driver on the job, was terminated because the work he was hired to complete had dried up. Plaintiff has therefore failed to establish that Defendant's "proffered reason" of a position-wide furlough is a "pretext calculated to mask retaliation" in the form of cutting his hours or terminating him. *Miller*, 795 F. App'x at 595. Plaintiff has thus failed to offer significant evidence that Defendant retaliated against him by reducing his hours and ultimately terminating him.

---

[5] The court notes that in his Affidavit, Plaintiff asserts that he "reviewed the payrolls provided by Defendant" and that the job "appears to have been fully staffed for the three days that [he] was told not to come in." (*See* ECF No. 38-2 at 6, ¶¶ 37–38). This conclusory statement is insufficient to raise a question of material fact on summary judgment.

### 2. *Defendant had a typical business reason for requiring Plaintiff's medical releases.*

Plaintiff also asserts that Defendant required that he receive two medical releases before he could return to work as retaliation for his complaints. (*See* Compl. at ¶ 80). On November 8, 2014, Plaintiff became "very ill" at work and had to leave the jobsite early. He was told by Defendant that he could not return to work until he received two doctors' notes. (Compl. at ¶ 49; ECF No. 38-2 at 6–7, ¶¶ 39–44).

While, as discussed above, the parties disagree as to whether Plaintiff complained of dizziness, it is undisputed that his illness was severe enough that it required him to stop working and go home. Defendant has a business reason for wanting to ensure that its employers who drive heavy machinery are healthy enough to perform their jobs, and while Plaintiff may feel that Defendant's requirement was excessive, the record is devoid of any facts or indications that the requirement was abusive or a pretext for retaliation. Indeed, the court cannot "act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt*, 845 F.3d at 1308 (quotations and citations omitted). As such, Plaintiff cannot establish that Defendant's requirement to obtain two medical releases was retaliatory, and Defendant is therefore entitled to summary judgment on Plaintiff's claim.

### CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (ECF No. 32) is **GRANTED**. The Clerk of Court is **DIRECTED** to **CLOSE** the above-captioned civil case.

DATED this 10th day of December, 2020.

BY THE COURT:

_____
Clark Waddoups
United States District Judge